UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Roderick Demetrius Celestaine, | ) | Civil Action No.: 4:21-cv-03818-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | ORDER |
| Kilolo Kijakazi, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits(DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

## I. RELEVANT BACKGROUND

### A. Procedural History

Plaintiff filed an application for DIB on December 20, 2019, alleging inability to work since December 18, 2018. (Tr. 12). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in June 2021 at which time Plaintiff and a vocational expert (VE) testified. The Administrative Law Judge (ALJ) issued an unfavorable decision on June 30, 2021, finding that Plaintiff was not disabled within the meaning of the Act. (Tr. 12-24). Plaintiff filed a request for review of the ALJ's decision, which the Appeals Council denied on September 24, 2021, making the ALJ's decision the Commissioner's final decision. (Tr.1-3). Plaintiff

filed an action in this court in November 2021. (ECF No. 1).

**B.    Plaintiff's Background**

Plaintiff was born on March 16, 1968, and was fifty years old on the alleged onset date. (Tr. 22). Plaintiff had at least a high school education and past relevant work experience as a social welfare administrator, infantry weapons crewmember, and paralegal. (Tr. 22). Plaintiff alleges disability originally due to "back, wrist, feet-plantar fascistic, right hip/left hip tendonitis, radiculopathy, right knee/left knee, right hand, left shoulder/right shoulder, migraines, neck, depression, anxiety, and PTSD. (Tr. 58)(errors in original). Pertinent medical records will be discussed under the relevant issue headings.

**C.    The ALJ's Decision**

In the decision of June 30, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 12-24):

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.

2.  The claimant has not engaged in substantial gainful activity since December 18, 2018, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: degenerative disc disease, major joint dysfunction, migraines, depressive disorder, PTSD, and anxiety (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) as follows: the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently. He can sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8- hour shift. The claimant can frequently reach

        overhead bilaterally. The claimant can occasionally climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. The claimant can have occasional exposure to hazards, such as unprotected heights and moving machinery. The claimant is able to do work equivalent to Level 2 GED Reasoning Development per the DOT/SCO. He can frequently interact with supervisors and co-workers and can occasionally interact with the general public. The claimant will be off task 5% of the time in an 8-hour workday in addition to regularly scheduled breaks. The claimant will need to be absent from work 1 day per month on a consistent basis.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on March 16, 1968 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564)..

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2018, through the date of this decision (20 CFR 404.1520(g)).

## II. DISCUSSION

Plaintiff argues the ALJ erred in finding plantar fasciitis as a non-severe impairment. Plaintiff argues the ALJ erred in determining the RFC as to migraines. Plaintiff argues the ALJ erred in the subjective symptom evaluation. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

**A.     LEGAL FRAMEWORK**

### 1.     The Commissioner's Determination–of–Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5)

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

whether the impairment prevents him from doing SGA.  *See* 20 C.F.R. § 404.1520.  These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary.  20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work.  See 20 C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982).  The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy.  To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW.  *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002).  If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work.  *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.     **The Court's Standard of Review**

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party."  42 U.S.C. § 405(g).  The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by

substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence as a threshold is "not high;" "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

**B.    ANALYSIS**

**Plantar Fasciitis**

Plaintiff argues the ALJ erred in finding plantar fasciitis as a non-severe impairment.

A severe impairment is defined by the regulations as "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20

C.F.R. § 404.1520(c). Plaintiff bears the burden of demonstrating that he has a severe impairment. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). However, "'[a]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' " *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir.1984) (*quoting Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir.1984)). The severe impairment inquiry "is a de minimis screening device to dispose of groundless claims." *McCrea v. Comm'r*, 370 F.3d 357, 360 (3rd Cir. 2004) (citation omitted). A finding of a single severe impairment at step two of the sequential evaluation is enough to ensure that the factfinder will progress to step three. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir.2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

The ALJ gave several reasons supporting the non-severe finding. The ALJ noted Plaintiff had a history of plantar fasciitis, referencing the VA rating verification(Ex. 7D). (Tr. 15, 213-234). The ALJ noted that during the relevant period, there was no regular treatment for plantar fasciitis. (Tr. 15).[3] The ALJ noted exams did not show any foot abnormalities or inflammation. The ALJ stated that Plaintiff did not testify about any specific limits resulting from plantar fasciitis, citing the August 2020 consultative exam(Ex. 9F). (Tr. 15, 350-357). This is an accurate statement of the record by the ALJ as to history, exams, and testimony.

Plaintiff briefly argues this issue focusing on the VA rating of 50% for extreme tenderness of

---

[3] The record displays at the August 2020 consultative exam, under history, Plaintiff stated he wore orthotics on both feet for plantar fasciitis. (Tr. 354). Plaintiff had surgery on his feet in 2013. (Tr. 355).

feet. Plaintiff's brief speculates that no regular treatment would provide relief. (ECF No. 10 at 9). Under the new regulations for applications after March 27, 2017, VA opinions do not have to be assigned any weight; further, an ALJ does not have to provide any analysis about the VA opinions. 20 C.F.R. § 404.1504. Plaintiff again emphasizes the VA rating in the reply brief, but the ALJ simply has no obligation as to the rating under the current regulations. All the ALJ must consider is the supporting evidence in the record; it is clear the ALJ did that here where there were exams of no foot abnormalities. (Tr. 15).

Plaintiff asserts a new argument in his reply brief that "lack of treatment" of plantar fasciitis creates "a gap in evidence which the ALJ was obligated to fill." (ECF No. 12 at 1). "A party waives an argument by failing to present it in its opening brief or by failing to 'develop its argument—even if its brief takes a passing shot at the issue.' " *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017)(alterations and citation omitted). Nonetheless, even if it was not waived, the issue is without merit. "The key consideration is 'whether the record contained sufficient medical evidence for the ALJ to make an informed decision' regarding the claimant's impairment." *Lehman v. Astrue*, 931 F. Supp. 2d 682, 692-693 (D. Md. 2013) (quoting *Craft v. Apfel*, No. 97-2551, 1998 WL 702296 (4th Cir. 1998)). Plaintiff's own lack of treatment for an impairment alleged to be disabling does not create a gap in the record. Notably, an "ALJ is under no obligation to supplement an adequate record to correct deficiencies in a plaintiff's case." *Lehman*, 931 F. Supp. 2d at 693. Under the effective regulations, the ALJ is only required to seek additional evidence if the ALJ cannot reach a conclusion about whether Plaintiff is disabled based upon the evidence in the case record. 20 C.F.R. § 1520b. Here, the ALJ had sufficient medical evidence in the record to determine the issue of Plaintiff's disability.

Substantial evidence supports the ALJ's assignment of plantar fasciitis as non-severe.

**<u>Migraines</u>**

Plaintiff argues the ALJ erred in determining the RFC as to migraines. Plaintiff argues there should be further concentration and absence limitations in the RFC.

An adjudicator is solely responsible for assessing a claimant's RFC. 20 C.F.R. § 416.946(c). In making that assessment, he must consider the functional limitations resulting from the claimant's medically determinable impairments. Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2. This ruling provides that: "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8, *7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* Additionally, " 'a necessary predicate to engaging in a substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.' " *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (*quoting Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See Craig*, 76 F.3d at 595.[4]

---

[4] The court cannot ignore relevant sources; neither party has cited to SSR 19-4p, which provides explanation as to how primary headache disorders(listed example: migraine) are evaluated in disability claims. SSR 19-4p, 2019 WL 4169635, *2. Diagnostic criteria for a migraine without aura includes lasting 4-72 hours. SSR 19-4p, *5. "Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." SSR 19-4p, *8.

9

The ALJ found migraines as a severe impairment.[5] (Tr. 14). The ALJ gave an RFC with limitations of: "able to do work equivalent to Level 2 GED Reasoning Development per the DOT/SCO. He can frequently interact with supervisors and co-workers and can occasionally interact with the general public. The claimant will be off task 5% of the time in an 8-hour workday in addition to regularly scheduled breaks. The claimant will need to be absent from work 1 day per month on a consistent basis." (Tr. 17). The ALJ considered Plaintiff's testimony: "He also alleged to having 15 to 16 migraines per month. He noted that he needs to take medication, go to a dark room, and lie down when he has a migraine (which typically last 1 to 2 hours at a time)." (Tr. 18). The ALJ found Plaintiff's allegations about the intensity, persistence, and limiting effects of symptoms not to be entirely consistent with the record evidence. (Tr. 18). The ALJ discussed treatment of migraines. (Tr. 19). Plaintiff used Maxalt to help. (Tr. 19). Plaintiff had never sought urgent or emergent care for any migraines. Plaintiff did not seek out specialty care with a neurologist. Plaintiff generally denied having problems with headaches at multiple exams which the ALJ noted would not be consistent with testimony of 15-16 migraines each month. The ALJ cited May and October 2019 family practice notes(Exs. 4F/12, 4F/17). (Tr. 19, 325, 330). Even assuming arguendo that ALJ may have misstepped in relying on objective exam findings in discussing migraines,[6] this is but one reason given for finding

---

[5] Plaintiff asserts that the ALJ found migraines as not severe; this is inaccurate (ECF No. 12 at 3).

[6] Migraines are not generally detectable through objective testing or physical exams and thus a lack of findings would not necessarily reflect an absence of the conditions or a lesser degree of the severity. *Woody v. Kijakazi*, 2022 WL 37025, *6 (M.D.N.C. Jan. 4, 2022)(collecting cases); *see also Cox v. Saul*, 4:19-cv-2717-TER, 2021WL 973345, *5 (March 16, 2021). *But see Ruehl v. Kijakazi*, No. 2:20-CV-03846-DCN-MGB, 2021 WL 4046432, at *7 (D.S.C. Aug. 6, 2021), *report and recommendation adopted*, 2021 WL 4037481 (D.S.C. Sept. 3, 2021)("courts in this circuit have repeatedly found no error where the ALJ relied in part on normal diagnostic and exam findings to discount the severity of a claimant's headaches")

the current RFC accounted for the impact of Plaintiff's migraines and is not outcome determinative error as the ALJ gave several other supportive explanations with citation to evidence. The court cannot say that a reasonable mind would not reach this RFC in view of the totality of the evidence.

In formulating the RFC, the ALJ considered Plaintiff's allegations, subjective reports, objective evidence, and opinions. (Tr. 17-22). The ALJ supported the functional limitations found in the ALJ's RFC determination with discussion and citation to substantial evidence in the record. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. An RFC is "an administrative assessment made by the Commissioner based on all the relevant evidence in the case record." *Felton-Miller v. Astrue*, 459 Fed. Appx. 226, 230-31 (4th Cir. 2011) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)). Based upon the foregoing, substantial evidence supports the ALJ's RFC.

**Subjective Symptom Evaluation**

Plaintiff argues the ALJ erred in the subjective symptom evaluation.

SSR 16-3p sets out "the process ALJs use to evaluate the intensity and persistence of a claimant's symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the record." *Id.*(internal citations and quotations omitted). Under *Craig v. Chater*, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed

---

(collecting cases) and SSR 19-4p, *8 (looking at consistency and supportability of symptoms and objective evidence).

established does the fact-finder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to evaluate the intensity and persistence of symptoms to determine how symptoms limit capacity for work. *See also* 20 C.F.R. § 404.1529; SSR16-3p, *4.

The ALJ may choose to reject a claimant's testimony regarding his condition, but the ALJ must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. *Hatcher v. Sec'y, Dep't of Health & Human Servs.*, 898 F.2d 21, 23 (4th Cir. 1989) (quoting *Smith v. Schweiker*, 719 F.2d 723, 725 n.2 (4th Cir. 1984)). A claimant's allegations "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" *Craig*, 76 F.3d at 595. The ALJ considers the evidence in the record as a whole when analyzing Plaintiff's claims, as does this court when reviewing the ALJ's decision. *See id.*; *see* SSR 16-3p, at *4.

A claimant's statements about intensity, persistence, and limiting effects of symptoms, which are inconsistent with the objective medical evidence and other evidence, are less likely to reduce her capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). An individual's symptoms are evaluated based on consideration of objective medical evidence, an individual's statements directly to the Administration, or to medical sources or other sources, and the following factors:

   1. Daily activities;
   2. The location, duration, frequency, and intensity of pain or other symptoms;
   3. Factors that precipitate and aggravate the symptoms;
   4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
   5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
   6. Any measures other than treatment an individual uses or has used to relieve pain or

>   other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>   7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). The ALJ at step three is to "consider the individual's symptoms when determining his or her residual functional capacity and the extent to which the individual's impairment-related symptoms are consistent with the evidence in the record." SSR 16-3p, at *11.

Plaintiff's arguments focus on Plaintiff's testimony versus Plaintiff's reports to providers: "claimant's testimony regarding the pain and limiting effects of his impairments are entirely consistent with his repeated complaints over time to medical providers." (ECF No. 10 at 12). While this can be part of the ALJ's analysis, the subjective symptom evaluation further considers whether statements about symptoms are inconsistent with the <u>objective medical evidence and other evidence</u>, and if they are inconsistent, such statements are less likely to reduce capacity to perform work related activities. SSR 16-3p, at *7; 20 C.F.R. § 404.1529(c). When performing the subjective symptom evaluation, an ALJ considers allegations in testimony and in records. Plaintiff does not argue specifically about what allegations are consistent with the entire medical record, but cites generally "pain and other symptoms." (ECF No. 10 at 12).

The ALJ considered Plaintiff's hearing testimony:

> At the hearing, the claimant testified to back and joint pain, which limits his ability to walk and bend. He reported using a non-prescribed walking stick to ambulate. He said that he can only sit and stand about 10 to 15 minutes at a time, each. The claimant reported lifting no more than 10 to 15 pounds at a time. He also alleged to having 15 to 16 migraines per month. He noted that he needs to take medication, go to a dark room, and lie down when he has a migraine (which typically last 1 to 2 hours at a time).
>
> Additionally, the claimant testified to mental impairment. He reported having difficulty concentrating and completing tasks in a timely manner. He said that he prefers to be

away from people, has difficulty trusting others, and does not like to be in crowds. He reported having difficulty sleeping at night. He also noted that while his medications help, they "knock him out" and result in dizziness.

(Tr. 17-18).

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effects of symptom were not entirely consistent with the evidence for the reasons explained in the decision. (Tr. 18). The ALJ then summarized medical records as to Plaintiff's back problems with citation to exhibits of MRI results and treatment used: naproxen, Voltaren gel, and a TENS unit. (Tr. 18). The ALJ noted Plaintiff had no recommendation for surgery and did not receive any physical therapy. The period before the ALJ is from December 18, 2018 through June 2021; the ALJ noted there was no regular medical treatment for physical complications since 2019 and this was not consistent with testimony of debilitating physical deficits. (Tr. 18). The ALJ discussed that despite testimony of using a walking stick, the record did not show any regular use of an assistive device for ambulation. (Tr. 18). The ALJ noted Plaintiff's reports of ability to do chores including vacuuming and mowing. (Tr. 18). The ALJ noted exams of normal gait, 5/5 strength, and negative straight leg raising. (Tr. 18-19). The ALJ summarized the August 2020 consultative exam where Plaintiff did not have difficulty ambulating, easily got up and down, was able to squat, and had 5/5 strength. (Tr. 19). The ALJ noted this evidence supported the RFC of light. (Tr. 19). Then, the ALJ discussed migraines as demonstrated above. (Tr. 19). The ALJ summarized Plaintiff's mental health medications, which were reported to help. (Tr. 19). The ALJ found side effects of daytime sedation consistent with testimony and consistent with a taper down as a result of the complaint, citing VA 2021 progress notes(Ex. 14F). (Tr. 19, 414-418, 423-424). The ALJ further analyzed these alleged side effects:

> Still, medical examinations do not demonstrate significant objective complications from medication side effects or trouble sleeping at night upon examination. The claimant did

14

>not appear tired with any consistency and was observed to be alert and oriented with good eye contact and logical thoughts (12F/5; 14F/10). The claimant also did not appear dizzy upon examination and was observed to have negative Romberg testing, intact cranial nerves, and normal cerebellar function (9F; 10F16, 21). Hence, I find that the residual functional capacity fully accounts for the claimant's for the impact of the claimant's medication side effects and sleep issues.

(Tr. 20). The ALJ then discussed Plaintiff's ability to drive, shop, tend to personal care, and household chores. The ALJ noted Plaintiff did not require urgent or emergency care. Plaintiff did not regularly complain of memory problems to his treating providers. "He also had a fairly large gap in mental health treatment, which does not suggest mental health dysfunction to the extent alleged. The claimant was last seen by his psychologist at Post Trauma Resources in February of 2019, and it does not appear the claimant sought out treatment with a mental health provider again until January of 2020 when he starting seeing Kevin Krebs, M.D., and acknowledged that he was not currently taking any mental health medication (see 3F; 5F/2)." (Tr. 20). The ALJ summarized mental health treatment notes. (Tr. 20). The ALJ concluded as to mental conditions: "Accordingly, in considering the record as a whole, including the lack of any regular emergency care for mental health exacerbations and the medical evidence showing that the claimant was alert, oriented, and cooperative with logical thoughts, intact memory, average cognitive ability, the ability to follow simple directions well, and the ability to maintain focus, I have found that the claimant is capable of work as set forth in the above residual functional capacity despite his mental conditions." (Tr. 21). The ALJ then evaluated the persuasiveness of opinions. (Tr. 21-22). The ALJ concluded that based on the entire record which naturally includes the hearing testimony, the evidence failed to fully support Plaintiff's disability assertions. (Tr. 22).

As displayed above, the ALJ considered a multitude of the SSR 16-3p factors, like Plaintiff's allegations regarding the type, dosage, effectiveness, and side effects of medication, daily activities, and treatment other than medication. (Tr. 18-21). The ALJ fully analyzed Plaintiff's subjective complaints.

The ALJ supported his finding–that Plaintiff's intensity, persistence, and limiting effects from Plaintiff's symptoms were not entirely consistent with the record–with citation to substantial evidence. *See also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1999)("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"). A claimant's allegations alone can never establish that he is disabled. 20 C.F.R. § 404.1529. An ALJ can discount a Plaintiff's subjective complaints when they are unsupported by the record. 20 C.F.R. § 404.1529; *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996). Plaintiff is not required to be without symptoms to be found not disabled by the ALJ. Even where there is conflicting evidence that might have resulted in a contrary decision, our review is limited to whether substantial evidence supports the ALJ's decision. Based on the evidence before the ALJ, the ALJ conducted a proper evaluation of subjective symptoms and cited substantial evidence to support the finding that Plaintiff's allegations of disabling symptoms were not consistent with the record.

### III. CONCLUSION

This court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. *Richardson*, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock*, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). As previously discussed, despite the Plaintiff's claims, he has failed to show that the Commissioner's decision was not based on substantial evidence. Based

upon the foregoing, and pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is AFFIRMED.

January 4, 2023
Florence, South Carolina

s/ Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge